UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRENDA SCISSONS and NADIA THOMAS,<br><br>　　Plaintiffs,<br><br>　vs.<br><br>UNITED STATES OF AMERICA and PATRICK PIPE,<br><br>　　Defendants. | Civil No. CV03-0531-S-EJL<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER** |

On October 17, 2006, this Court empaneled a jury to resolve certain factual issues concerning Jake Thomas' <u>Bivens'</u> claim against Bureau of Indian Affairs Officer Patrick Pipe in Count 1 and to issue an advisory jury verdict on the claims of Brenda Scissons and Nadia Thomas for wrongful death, negligent infliction of emotional distress and intentional infliction of emotional distress against the United States. The jury returned its verdict on October 25, 2006 in favor of Defendant Pipe and Defendant United States of America. The Court is now prepared to issue it findings of fact and conclusions of law.

**Findings of Fact**

This action arises out of the shooting death of Jake Tomas during the early morning hours of December 9, 2001, by Bureau of Indian Affairs Police Officer, Sergeant Patrick Pipe. The shooting occurred during a physical altercation between Officer Pipe and Jake Thomas. The facts of this case are tragic and the case is a difficult one to evaluate almost four years after the shooting of Jake Thomas occurred. After hearing all the evidence, the Court finds the following facts have been proven by a preponderance of the evidence:

It is undisputed that on the evening of December 8th, 2001, Jake Thomas, 19 years old, had been drinking alcohol. His blood alcohol level at the time of death exceeded the legal limits. Ms. Scissons had a report from some of Jake's friends that he was acting crazy and had been choking

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER - 1

a friend. Ms. Scissons call the police dispatcher at around 3:30 a.m. on the morning of December 9, 2001 to ask the police to try to find Jake Thomas who was walking somewhere near Mountain View road on the Duck Valley Indian Reservation. Ms. Scissons also reported to the dispatcher that Jake had allegedly been choking a young woman. The dispatcher relayed the message to Officer Pipe who spent about an hour trying to locate Jake Thomas. The Officer reported back to dispatch that he was unable to locate Jake and went off duty and home to bed.

Around 5:20 a.m. on the same morning, Ms. Scissons again called the police dispatcher and reported (in a hushed voice) that Jake Thomas was at the residence. Ms. Scissons was told an officer would be sent to her house. Officer Pipe was informed of the call and he quickly dressed to respond to the call. Officer Pipe did not believe there was any available BIA backup to assist with the call.

As the Officer approached the residence, Nadia Thomas saw the officer's police car park by the residence. It can be inferred from the record that Jake also saw the police car arrive because the Officer walked through the open door on the porch and as he was approaching the front door to the house, the door was opened and the Officer observed Jake walking away from the front door. (Ms. Scissons and Nadia Thomas did not testify that they had opened the door and it was December so the door was unlikely to have been left open.) The Officer entered the house wearing his BIA jacket, his duty belt and carrying a large flashlight. Ms. Scissons testified she knew Officer Pipe to be a police officer and the Court can reasonably infer that Jake also knew Officer Pipe was a police officer after seeing his police car, his jacket and duty belt and the fact that Pipe had cited Jake Thomas in the past for a traffic violation. The Officer inquired what was going on. There is a dispute as to whether anyone responded to this question and whether Ms. Scissons said something about a girl being choked. The Officer assessed the situation and determined Jake was intoxicated and stated Jake needed to come with the officer. The Officer intended to arrest Jake Thomas for drunk and disorderly conduct. The Officer also motioned for Jake to come with him. Jake did not respond to the verbal or physical hand motions of the officer. As the Officer approached Jake to take his arm, Jake attacked the officer and knocked him against a wall.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER - 2

The fight between the Officer and Jake was very violent as indicated by the location of the officer's glasses, flashlight, hand cuffs, hat, blood, broken furniture, and damaged walls shown in the crime scene photos. Ms. Scissons called dispatch requesting back up twice during the altercation. There is undisputed testimony that Jake was on top of the officer and had him pinned during the fight. The Officer testified that he heard people yelling at Jake to stop and something to the effect "stop, you are going to kill him [the officer]." The officer used his flashlight as a baton and then his mace when Jake Thomas was behind him to try to stop Jake. At one point in the fight, the officer felt a tug on his duty belt near the area of his gun. After being tackled a second time, the Officer got free and pointed his weapon. At the time the weapon was discharged, Jake was moving towards or charging the officer. The Officer had probable cause to believe Jake posed a significant threat of death or serious physical injury to the officer or others. Stated another way, the Court finds as did the jury, that Officer Pipe was reasonably in fear for his life at the time he fired the two bullets into Jake Thomas.

## Conclusions of Law

<u>Capacity to Sue.</u>

On the first day of trial, the Court raised the issue of whether Brenda Scissons and Nadia Thomas had standing to bring the <u>Bivens'</u> action on Jake Thomas' behalf. "Standing is a necessary element of federal-court jurisdiction." <u>Big Country Foods, Inc. v. Board of Education</u>, 952 F.2d 1173, 1176 (9th Cir. 1992). The Court reserved its ruling on the issue and allowed the trial to proceed.

It is well-settled that a <u>Bivens</u> claim against a government actor whose conduct fatally injures a person survives the death of that person. <u>Carlson v. Green</u>, 446 U.S. 14, 24 (1980) (if state statutes or state common law would abate the survival of the action, the action survives pursuant to federal common law). Since it is clear the claim survives, the question for this Court is who has standing to bring the action on behalf of the deceased. In most of the cases reviewed by the Court, the personal representative or executor of the estate of the deceased brought the action and the capacity

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER - 3

to sue was not an issue in the judicial decisions. See Carlson (administratrix of estate filed action), Robertson v. Wegman, 436 U.S. 584 (1978) (executor lacked capacity to sue when civil rights suit was filed before plaintiff's death); Jones v. George, 533 F.Supp. 1293 (S.D. W. V. 1982) (claim filed administratrix of Plaintiff's estate); Berry v. City of Muskogee, 900 F.2d 1489 (10th Cir. 1990) (§ 1983 survival action must be brought by estate of deceased victim). Plaintiffs seek to have the Court apply Idaho's wrongful death statute to allow an heir to bring the Bivens' action instead of the representative of the decedent's estate. Defendants argue Plaintiffs Brenda Scissons and Nadia Thomas have failed to comply with Idaho's probate law and be appointed by the Court to bring Jake Thomas's personal Bivens action.

In applying the relevant Ninth Circuit cases, it is unclear exactly how the Ninth Circuit would resolve the issue in this case involving Native American rights since the decedent was residing on the Duck Valley Indian Reservation and was of Native American heritage. However, this Court is bound by Ninth Circuit precedent and this Court has reviewed Moreland v. Las Vegas Metropolitan Police Department, 159 F.3d 365 (9th Cir. 1998) (applied general Nevada survival statute requiring an executor or administrator to bring Section 1983 claim instead of Nevada's wrongful death statute which allowed certain heirs to bring claims) and Byrd v. Guess, 137 F.3d 1126 (9th Cir. 1998) (failure to demonstrate Fourth Amendment standing precludes claim regardless of its potential merits). The Court finds that under such cases, the Plaintiffs in this case have not carried their burden to establish their capacity to sue on Jake Thomas' behalf in Count 1.

A Bivens action is a personal cause of action for the violation of civil or constitutional rights by federal actors. When plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts. Idaho's wrongful death statute, Idaho Code § 5-311 which allows both heirs (as defined by the statute) and personal representatives to bring a wrongful death claim, is a modification to Idaho's common law. It is undisputed that the remedies provided by a Bivens action are not necessarily the same as those available under the wrongful death statute. A governmental agency should not fact suit from multiple heirs for an alleged constitutional violation. By requiring that a person be

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER - 4

appointed by the courts or have representational capacity as set forth in a will before an estate is probated, allows one party to handle all possible claims against or for the decedent and avoids multiple lawsuits in case all the interests of all the heirs are not represented.  For these reasons, the Court does not find Plaintiffs' argument persuasive that Idaho's wrongful death statute should be applied to determine who has the capacity to sue for Jake Thomas' Bivens action.

In this case, Count 1 alleges Jake Thomas' Fourth and Fifth Amendment rights were violated.[1]  "Fourth Amendment right are personal rights which . . .may not be vicariously asserted." Alderman v. United States, 394 U.S. 165 174 (1969).  Plaintiffs have the burden of alleging and proving standing.  See Northwest Environmental Defense Center v. BPA, 117 F.3d 1520, 1528 (9th Cir. 1997).  Like the plaintiffs in Byrd and Moreland, the Plaintiffs here noted in the Amended Complaint that Brenda Scissons was the mother of Jake Thomas and Nadia Thomas was Jake Thomas' sister.  However, there is no allegation in the heading of the complaint or in its body that Plaintiffs were suing in a representative capacity as Jake Thomas' successors in interest or as personal representatives of Jake Thomas' estate.  At no time did the Plaintiffs argue on the record or offer any evidence they had formally (or informally via Tribal court) been appointed as representative's of Jake Thomas' estate.  Nor did Plaintiffs move to amend the complaint to cure standing deficiencies.  Consequently, in applying the law set forth in Byrd and Moreland, Ms. Scissons and Ms. Thomas cannot bring Jake's Fourth Amendment claim in their individual capacities.

Liberty Interest

After the parties rested, Plaintiffs sought to present a Bivens liberty interest claim on behalf of Plaintiffs.  The Court denied the request to add the claim to the jury instructions or to be submitted to the jury.  Regardless of whether Brenda Scissons and Nadia Thomas have standing to

---

[1]No evidence was provided on Jake Thomas' Fifth Amendment claims, so this issue was not presented to the jury. The Court will discuss the Plaintiffs' right to bring a liberty interest in the Liberty Interest section of this Order.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER - 5

assert a Fourth Amendment claim based on Jake Thomas's death, they each may assert a Fourteenth Amendment claim based on the related deprivation of their liberty interest arising out of their relationship with Jake Thomas. See Moreland v. Las Vegas Metropolitan Police Department, 159 F.3d 365371 (9th Cir. 1998) ("[t]his substantive due process claim may be asserted by both the parents and children of a person killed by law enforcement officers").

In the Amended Complaint, Count 1 alleges Jake Thomas' Fourth and Fifth Amendment violations. Arguably, the Fifth Amendment also provides a liberty interest and although the Plaintiffs did not cite to the Fourteenth Amendment for the liberty interest, they put Defendants on notice of their liberty interest claim.

The problem in this case is that Count 1 relates solely to Jake Thomas' Fifth Amendment rights, not the Fifth Amendment rights of Brenda Scissons or Nadia Thomas. "A parent's loss of a child's society ' raises a different constitutional claim' than the child's direct Fourth Amendment claim." Byrd v. Guess, 137 F.3d 1126, 1134 (9th Cir. 1998) (citing Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991)). The Fourth and Fifth Amendment (liberty interest) rights of Ms. Scissons and Ms. Thomas were dismissed without objection from the Plaintiffs when Count granted Defendants' Motion for Partial Summary Judgment in Docket No. 46. Accordingly, any liberty interest of these Plaintiffs was no longer pending before the Court when the matter went to trial.

Furthermore, the Court determined that it would be highly unfair and prejudicial to the Defendants to allow the liberty interest claim to be presented to the jury when the claim was raised for the first time after the close of evidence by each side. Finally, the deliberate indifference standard of proof required for a Fifth Amendment claim is different than the objective reasonableness test for a Fourth Amendment claim and neither side had presented any evidence relating to this standard of proof. See Byrd v. Guess, 137 F.3d 1126, 1134 (9th Cir. 1998) ("unfair to submit Fourteenth Amendment claim to jury when there had been no evidence on it during trial").

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER - 6

Law of the Case

The Court incorporates by reference the law set forth in the jury instructions for the elements required to be proven for each claim. Case cites for the law are included in the proposed jury instructions of the parties which were filed with the Court. For the claims pursuant to the Federal Tort Claims Act, the Court applied the substantive law of the state of Idaho which is the state wherein the alleged wrongful conduct occurred. See LaFromboise v. Leavitt, 439 F.3d 792 (8th Cir. 2006).

Qualified Immunity

Assuming for argument purposes, that the Plaintiffs have standing to bring Count 1, the Court would still dismiss the action based on qualified immunity for the officer. The purpose of Bivens actions is to deter government actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties. Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). To state a claim under Bivens, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of federal law. Id. In this case, it is not disputed that Officer Pipe was acting in his capacity as a federal Bureau of Indian Affairs law enforcement officer during the early morning hours of December 9, 2001. Therefore, the question becomes, did the officers' actions deprive Jake Thomas of a right, privilege or immunity secured by the Constitution or federal law.

Defendant Pipe has raised the defense of qualified immunity. Police officers are entitled to "qualified immunity" for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The initial question in determining whether an officer is entitled to qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001); Billington v. Smith, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, "there is no necessity for further inquiries concerning qualified

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER - 7

immunity." Saucier, 533 U.S. at 201. If, however, a violation could be established under the facts presented, the next step is to determine whether the right was "clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208. Plaintiff bears the burden of establishing the rights violated were "clearly established." Houghton v. South, 965, F.2d 1532, 1534 (9th Cir. 1992).

The jury determined in their answers to the Special Verdict, and the Court agrees as a matter of law, that Officer Pipe did not violate the constititional rights of Jake Thomas by entering the residence, arresting Jake Thomas or in using deadly force. The jury specifically found Defendant Pipe did not enter the residence of Brenda Scissons and Jake Thomas in violation of the Fourth Amendment; Defendant Pipe had probable cause to arrest Jake Thomas; that Jake Thomas was moving towards or charging Defendant Pipe at the time Defendant Pipe shot Jake Thomas; and that Defendant Pipe had probable cause to believe that Jake Thomas posed a significant threat of death or serious physical injury to the officer or others at the time Defendant Pipe shot Jake Thomas. The jury also found that Officer Pipe did not intentionally or recklessly provoke Jake Thomas' violent conduct.

Having found no constitutional violation, the qualified immunity analysis is ended and Officer Pipe is entitled to qualified immunity from suit in Count 1 of the Amended Complaint. Saucier v. Katz, 533 U.S. 194, 201 (2001).

### Negligence - Wrongful Death

In applying the requisite elements set forth in Jury Instruction No. 40, the Court finds by a preponderance of the evidence that Officer's Pipe's shooting of Jake Thomas was not negligent. Because the Court finds the Officer did not act negligently, the Court need not address the

affirmative defense of self-defense. The Court's verdict is consistent with the advisory jury verdict on this claim.

### Intentional Infliction of Emotional Distress

There is no doubt the Plaintiffs suffered and continue to experience emotional distress in dealing with the loss of Jake Thomas. However, this Court, must apply the rule of law and determine if Defendant United States of America is legally liable for the emotional distress suffered. In applying the requisite elements set forth in Jury Instruction No. 41 for intentional infliction of emotional distress, the Court finds by a preponderance of the evidence that Officer Pipe did not engage in conduct that was intentional or reckless and that the conduct did not rise to the level of being "extreme and outrageous." Accordingly, Officer Pipe did not intentionally inflict emotional distress on either Plaintiff. The Court's finding is consistent with the advisory jury verdict on this claim.

### Negligent Infliction of Emotional Distress

In applying the requisite elements set forth in Jury Instruction No. 42 for negligent infliction of emotional distress, the Court finds by a preponderance of the evidence that Officer Pipe did not engage in conduct that was negligent and that the conduct did not rise to the level of being "extreme and outrageous." Accordingly, Officer Pipe did not negligently inflict emotional distress on either Plaintiff. This verdict is consistent with the jury's advisory verdict on this claim.

### ORDER

Being fully advised in the premises, the Court hereby orders that:

1) Plaintiffs do not have standing to bring Count 1 and Defendant Patrick Pipe is entitled to qualified immunity for his actions taken on the morning of December 9, 2001, and the <u>Bivens'</u> claim in Count 1 is **DISMISSED**.

2) Defendant United States of America is entitled to judgment in its favor on the claims of wrongful death, intentional infliction of emotional distress, and negligent infliction of emotional distress by Plaintiffs Brenda Scissons and Nadia Thomas contained in Counts VII, IX and X.

3) Judgment shall be entered in Defendant's favor and the case is **DISMISSED IN ITS ENTIRETY**.

DATED: **November 1, 2006**

Honorable Edward J. Lodge
U. S. District Judge

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER - 10